B1SCHOFF, J.
This action was brought by the plaintiff to recover the amount of an indebtedness due him from the D. G. Yuengling, Jr., Brewing Company, payment of which he claimed to have been assumed by the defendant under an agreement with the first-named corporation. At the triai a verdict was rendered in favor of the defendant, and this appeal is taken from an affirmance by the general term below of the judgment thereupon entered. The indebtedness in question was the plaintiff's share in the deficiency remaining after foreclosure of a second mortgage upon the real *436 estate and certain other property of the D. G-. Yuengling, Jr., Brewing Company, made as security for an issue of bonds, two of which w'ere held by the plaintiff. A reorganization of this company, which was in an insolvent condition had been effected. A large majority of the bondholders had surrendered their bonds, under acceptable conditions, and the property foreclosed upon was purchased at the sale for the new corporation then al out to be formed,—this defendant. Besides the mortgaged, property, the old corporation had valuable stock in trade, machinery, and other property employed in conducting its business, also assets in the form of book accounts, all of which were transferred by that company to this defendant, for a nominal consideration, by a bill of sale, the terms of which instrument, together with certain proceedings taken by the defendant at a meeting of its directors at the time of the delivery of the papers furnish the matter for contention in this litigation. The proof consists of the minutes of the defendant’s meeting, which minutes embody the report of a committee on reorganization, and resolution adopted, together with an abstract from the reorganization agreement; also the bill of sale itself. This evidence was all received in behalf of the defendant, the plaintiff merely having placed in evidence a certain mortgage, wherein the resolution in question was set forth; and there is no dispute that the proceedings had were binding upon the defendant, and properly set forth in the proofs. The only portion of the reorganization agreement which will be seen to be material is that part which gives the committee discretionary power to apply certain unallotted bonds in satisfaction of the claim of those bondholders of the old company who did not assent to the reorganization, of whom the plaintiff was one. The pleadings admit, as to this, that this agreement did not provide for the assumption by the defendant of the plaintiff’s claim.
We now proceed to consider the evidence in the ease upon which a construction of the agreement between the original company and this defendant, touching the assumption of the former company’s debts may be arrived at:
On the 27th day of December, 1893, a regular meeting of the defendant’s directors was held and the report of the reorganization committee was read and adopted. This report set forth the purchase of the property of the old company, and the mortgage sale by Samuel TJntermyer, who was at that time ready to convey the said property to the defendant corporation; that the—
“Said Samuel TJntermyer did not, by virtue of the foreclosure and sale, acquire title to certain book accounts, stock in trade, and other assets of the said D. Gr. Yuengling, Jr., *437 Brewing Company,, which are still in possession of the old corporation; that schedules of said book accounts, stock in trade, and other assets, and of the debts and obligations to be assumed by the new company, are hereto attached, and marked ‘B’ and ‘O’ respectively, and are hereby embodied in this report as a part thereof.”
Schedule C, above referred to, did not include the bonds of the old company in the enumeration of debts to be assumed by the new, and in this regard the schedule agreed with the terms of the bill of sale actually delivered by the old company of its unmortgaged assets. As material to this question of assumption, the bill of sale was framed in the following language:
“And the party of the second part doth hereby convenant. and agree that, in consideration of said transfer as aforesaid it will assume, and doth assume, the payment of all the debts and obligations of the party of the first part, excepting the mortgage bonds of said party of the first part, and excepting all other indebtedness otherwise provided for in a certain plan or agreement of reorganization of the said party of the first part, pursuant to the terms of which the party of the second part ivas organized.”
So far there is seen to be no incompatibility between the reorganization agreement, the report of the committee, and the bill of sale, which last instrument was already prepared at the time of the meeting: and throughout the proceedings, up to this time, it is clear that the defendant’s intention Avas to refuse an assumption of the indebtedness due bondholders who had not assented to the reorganization plan. In the nature of such a plan, the old bondholders would not have been offered greater advantages, though withholding their consent to its terms, than could be acquired by their acceding to them, and a full assumption of the accrued indebtedness upon the old bonds by the reorganized company would probably have effected this result. The above considerations would apply to the original plan of reorganization of an insolvent company, looking to the acquirement of its property, when that property Avas completely applicable as security for an indebtedness which the plan itself would seek to have canceled in exchange for advantage offered under the reorganization. But at the time of the meeting which we are noAV considering this defendant Avas seeking to obtain further assets, of large value, from the old company, for a nominal consideration; and, to that end, it would not be remarkable if it found itself in a position where an as sumption of the claims of the nonassenting bondholders would be expedient, if insisted upon by the prospective transferror, the old corporation, as a condition to *438 the transfer. It is to be noted that the non assenting bonds represented but a comparatively small amount, the greater number having been already surrendered to the defendant; and it would appear that the ar-sets transferred were actually subject to a lien for the deficiency upon foreclosure in favor of the plaintiff and his companion bondholders, should such parlies see fit to enforce their claims. Moreover, it is certainly conceivable that the directors of the old corporation should insist upon an assumption by the transferee of all claims existing upon the assets to be transferred, as a measure of precaution against some very possible embarrassment.
We are now prepared to examine the further proceedings, as noted in the minutes of the defendant’s meeting. The report of the committee proceeds:
1 ‘1 hat this committee has therefore procured the execution by the D. G. Yuengling, Jr., Brewing Company of a bill of sale transferring the said book accounts, chattels, stock in trade, and all other property of the old company, of every kind and description, not included in the purchase of said Samuel Untermyer, to the end that the D. G. Yuengling Brewing Company shall be vested with all the property, rights, franchises, privileges, and good will of the D. G. Yuengling, Jr., Brewing Company, and assumes all its debts and obligations, so that the former company shall in all respects stand in the place of, and be the successor to, and as far as may be the same corporate body as, the last mentioned company. The said bill of sale will be delivered only upon the assumption by the new company of all said debts and obligations.”
Following this we have a statement by the chairman leading to the resolution of the corporation assuming the debts of the old company, as below:
“The chairman states that the D. G. Yuengling, Jr., Brewing Company is in possession of various books accounts, stock in trade, chattels, and chattel interests, which have not been included in the property transferred to Samuel Untermyer by means of the sale foreclosing the mortgage to the Farmers’ Loan and Trust Company, held by that company, to secure its bondholders, but that said D. G. Yuengling, Jr., Brewing Company has, at the instance of the reorganization committee, and pursuant to resolution of its board of directors, and with the consent of its stockholders, transferred all such chattels to this company, by means of a bill of sale, all subject to the acceptance and approval thereof by this board. In return of said transfer, this said company is to assume all the debts and obligations of the D. G. Yuengling, Jr., Brewing Company, in addition to those specified in the agreement of reorganization.
*439 “On motion of Mr. Yuengling seconded by Mr. Steers, it was unanimously resolved that this company assume all 11 e debts, obligations, and liabilities, of every kind and description, of the D. Gr. Yuengling, Jr., Brewing Company, in addition to the bonds and other obligations mentioned in tl e agreement of reorganization, and thereby provided to be assumed by this company, and that in return for, and as a consideration of, the assumption of said debts, obligations, and liabilities, this company accept from said B. G-. Yuengling, Jr., Brewing Company the bill of sale presented by the chairman, transferring unto this company all the peisonal property, effects, and chattels of every kind, including the stock in trade, book accounts, and good will, of said D. Gr. Yuengling Jr., Brewing Company, not included in the property covered by the trust mortgage given by said company to the Farmers’ Loan and Trust Company to secure bondholders, and not heretofore acquired by this company; the intent hereof being to vest in this company all property, right, franchise, privileges, and good will of the old company, so that this company shall in all respects stand in the place, and be the. successor of, and, so far as may be, the same corporate body as, the said D. Gr. Yuengling, Jr., Brewing Company aforesaid.”
In our view, it is clear that the defendant intended to bind itsMf for the payment of the indebtedness upon these outstanding bonds, such being the condition upon which a transfer of the assets in question was finally made. The final resolution is unmistakable in its terms, and, from the proceedings leading up to that resolution, we find the explanation of the inconsistency appearing in the form of the bill of sale. That instrument alone did not express the contract be tween these two corporations under which the transfer of these unmortgaged assets was made, although from such paper, and the schedule annexed to the committee’s report, it is, of course, apparent that the defendant’s desire had originally been to avoid the assumption of the plaintiff’s claim. The bill of sale, as executed by the old corporation, passed tille to the assets. described only when delivered and accepted. It was not executed by the defendant, and the recital of the latter’s obligations thereunder, while it would have been evidence of its intentions when accepting the transfer, without more, was not in contradiction of the facts actually attending that delivery and acceptance, a greater obligation having been assumed as a condition to the passing of title. Had the transferror been content with the condition of delivery as set forth in the bill of sale, there had been no call for the passage of this resolution; but this further condition wís hwisled upon, was complied with, and the transaction *440 was concluded agreeably to the form of the contract thus made. Tne bill of sale was before the defendant, delivery being postponed to its taking the action called for, and, in taking that action we may only presume that it was aware of its effect. The judgment below proceeded apparently upon the assumption that the bill of sale was executed and delivered after all the proceedings noted had been had, and that it was drawn up as an embodiment of the agreement finally reached. The undisputed facts, and the only reasonable inference to be deduced therefrom, are otherwise; and the competency of the evidence in support of those facts not only was in no way challenged, but was in effect conceded.. It is not posssble to uphold the judgment upon the provisions of section 1628 of the Code of Civil Procedure, as urged by the respondent. While that section prohibits the maintenance of an action to recover the mortgage debt, or a part thereof, after foreclosure, without leave of court, it is held to apply only to an action based upon the original obligation. Here the action is upon a new agreement made after foreclosure, and as such was maintainable without leave having been fiist obtained. Schultz v. Mead (Sup.) 8 N. Y. Supp. 663, affirmed 128 N. Y. 680, 29 N. E. 149.
The judgments of the general and trial terms below must be reversed, and since the action proceeds merely upon the legal effect of undisputed facts, judgment for the plaintiff is directed in the amount claimed, with costs. See cases cited in Riley v. Black, 1 Misc. Rep. 288, 292, 20 N. Y. Supp. 695.
All concur.